OPINION
{¶ 1} Plaintiff-appellant (hereinafter "appellant") appeals the judgment of the Shelby County Court of Common Pleas granting a Civ.R. 12(B)(6) motion to dismiss in favor of the defendant-appellees, the Archdiocese of Cincinnati (hereinafter "Archdiocese"), Archbishop Daniel Pilarczyk (hereinafter "Archbishop"), and Father Thomas Hopp.
 {¶ 2} In March 2004, appellant filed a complaint against the Archdiocese, the Archbishop, and Hopp alleging, inter alia, breach of fiduciary duty, negligence, respondeat superior, intentional infliction of emotional distress, corrupt activities, and punitive damages. Specifically, in appellant's first cause of action, appellant asserts that the Archdiocese breached its fiduciary duty when
Defendant Archdiocese became aware of Hopp's harmful conduct and/ormolestation of students, yet breached its fiduciary duty to Plaintiff byfailing to report Hopp's illegal and harmful conduct, by concealing suchconduct, by failing to take any action to investigate the details ofHopp's conduct, by failing to protect Plaintiff from harm, and by failingto identify Plaintiff as a victim in order to offer him aid andassistance, and by failing to warn and inform him of Hopp'spropensities.
 {¶ 3} Complaint at ¶ 16. In appellant's second cause of action, appellant states that
Defendant Archdiocese became aware of Hopp's harmful conduct and/ormolestations of students, yet negligently failed to report Hopp's illegaland harmful conduct, concealed the conduct, failed to take any action toinvestigate the details of Hopp's conduct, failed to protect Plaintifffrom harm, failed to identify Plaintiff as a victim in order to offer himaid and assistance, and failed to warm and inform him of Hopp'spropensities.
 {¶ 4} Id. at ¶ 20. In appellant's third cause of action, appellant claims that the Archdiocese and the Archbishop ratified Hopp's sexual abuse "through concealment of the conduct, the breach of the duties described [in the first two causes of action], and the facilitation by Defendants of further wrongdoing by Hopp." Id. at ¶ 24. In the appellant's fourth cause of action, appellant alleges that the conduct described in the first three counts of the complaint was "outrageous and has caused severe and emotional distress." Id. at ¶ 27.
 {¶ 5} In his fifth cause of action the appellant further alleges that the Archdiocese, the Archbishop, and Hopp conducted an "enterprise" pursuant to R.C. 2923.31. Id. at ¶ 30. Specifically, the appellant states:
The persons controlling the affairs of the enterprise(s) have conductedand/or participated in, directly or indirectly, the affairs of theenterprise(s) through a pattern of corrupt activities or pattern orpractice of corrupt activity in violation of O.R.C. § 2923.32. DefendantsArchdiocese, [Archbishop] and Hopp maintained and exercised control overthe enterprise(s) alleged.
 {¶ 6} Id. at ¶ 31. The complaint then proceeds to describe a detailed series of actions which the complaint alleges
constitutes a "pattern of corrupt activity" and violates R.C. Section2923.32, in that Hopp engaged in crimes of sexual offenses with minors,Defendants Archdiocese and [the Archbishop] failed to fulfill their legalobligations to report such crimes and participated in the concealment ofsuch crimes, and the actions and/or knowing omissions of DefendantsArchdiocese and [the Archbishop] facilitated Hopp's conduct and/orprevented Plaintiffs from seeking treatment or minimizing future harm.
 {¶ 7} Id. at ¶¶ 38. Finally, in appellant's sixth cause of action, appellant alleges that "[d]efendants' conduct was intentional, malicious and/or with reckless disregard for the welfare of the Plaintiff, justifying an award of punitive damages." Id. at ¶ 43.
 {¶ 8} On April 13, 2004, the Archdiocese and the Archbishop filed a motion to dismiss appellant's complaint pursuant to Civ.R. 12 (B)(6), which was granted based on the trial court's ruling that appellant's action was barred by the statute of limitations. Appellant now appeals this decision alleging three assignments of error. For the sake of judicial economy, the three assignments of error will be discussed together.
The trial court erred in dismissing plaintiff's claims when thecomplaint adequately alleged that plaintiff's knowledge of the abuseprior to april 2002 was insufficient to apprise him of the possibilitythat the archdiocese or the archbishop had been negligent in failing toprotect him, in failing to prevent further harm or in breaching afiduciary duty to him.
 The trial court failed to apply the discovery rule and equitableestoppel in determining the alerting event for plaintiff's claims againstthe archdiocese, and failed to recognize that the statute of limitationsbar is a fact-sensative determination.
 The trial court erred in dismissing the corrupt activities act claimwhen the complaint alleged that the wrongful conduct did not terminateuntil april 2002.
 {¶ 9} In O'Brien v. Univ. Community Tenants Union, Inc.
(1975), 42 Ohio St.2d 242, 327 N.E.2d 753, syllabus, the Ohio Supreme Court stated that "[i]n order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted (Civ.R. 12 (B)(6)), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." Furthermore, in reviewing a complaint for purposes of dismissing the action, a court must, as a matter of law, accept all of the factual allegations in the complaint as true, Id., and "make all reasonable inferences in favor of the non-moving party." Mitchell v. Lawson MilkCo. (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753.
 {¶ 10} In the appeal before us, both parties agree that the Ohio Supreme Court's decision in Doe v. United Methodist Church (1994),68 Ohio St.3d 531, 629 N.E.2d 402, is the governing law of this case. InDoe, a complaint was filed against the First United Methodist Church, Timothy S. Masten, and the Elyria City School District alleging that Masten, a high school music teacher and music director at First United, sexually abused Doe over two hundred times between 1981 and 1984. In his complaint, Doe sought recovery for negligent hiring against the school district, as well as negligent and willful conduct on behalf of United Methodist because "the church had actual or constructive knowledge of Masten's conduct with underage persons . . .," and, therefore, failed to protect Doe from the specified conduct. Id. at 532.
 {¶ 11} The Doe case came before the Ohio Supreme Court on an appeal from a Civ.R. 12(B)(6)/statute of limitations dismissal, and the Court preliminarily held that because Doe was aware that he was sexually abused by Masten when he reached the age of majority, then there was sufficient notice to trigger the commencement of the applicable statute of limitations to bar his claim against Masten. Id. at 538-39. The Court stated,
a minor who is the victim of sexual abuse has one year from the date heor she reaches the age of majority to assert any claims against theperpetrator arising from the sexual abuse where the victim knows theidentity of the perpetrator and is fully aware of the fact that a batteryhas occurred.
 {¶ 12} Id. at 539. Moreover, the Court ruled that because the allegations against Masten were time barred by the statute of limitations, then the derivative claims based on Masten's conduct against the church and the school district were barred as well pursuant to R.C.2305.10. Id.
 {¶ 13} However, the Ohio Supreme Court also addressed the independent claims arising from the alleged negligence of the school district and First United in failing to take some action to protect Doe from Masten's conduct. Id. The Court noted that these claims were "based upon the church's and the school district's own acts or omissions and have nothing to do with any theory of derivative liability." Id. (emphasis in original). Regarding these independent claims, the Court stated:
Thus, we recognize that the facts and events which triggered thestatute of limitations on appellant's claims for sexual abuse did notnecessarily trigger the R.C. 2305.10 two-year period of limitations onappellant's independent negligence claims against the church and theschool district. However, appellant has never claimed or argued that hisknowledge of the sexual abuse was insufficient to apprise him of thepossibility that the church or the school district had been negligent infailing to protect him from Masten. Under these circumstances, we areleft to assume that the events that triggered the one-year statute oflimitations for assault and battery were no different from the eventsthat triggered the two-year statute of limitations that applies toappellant's negligence causes of action against the church and the schooldistrict.
Id. (internal citations omitted and emphasis added).
 {¶ 14} Like Doe, in the instant case, appellant alleged in his complaint claims against the Archdiocese and the Archbishop that are independent of the claims against Hopp for the sexual abuse. These claims are based on the Archdiocese's and the Archbishop's own acts oromissions and have nothing to do with any theory of derivative liability. Id. Unlike Doe, however, appellant in this case has made a claim that his knowledge of the sexual abuse was insufficient to apprise him of the possibility that the church was negligent in failing to protect him from Hopp. Appellant's complaint states:
In April 2002, Plaintiff first learned that there were other victims ofHopp. Until that time, Plaintiff had no reason to believe that DefendantsArchdiocese and Pilarcyzk had ever known about Hopp's abuse. Until April2002, Plaintiff's knowledge of the abuse was insufficient to apprise himof the possibility that Defendants Archdiocese and Pilarcyzk werenegligent in failing to protect him, in failing to prevent further harmor in breaching a fiduciary duty to Plaintiff by failing to identify andassist him.
Complaint at ¶ 7 (emphasis added).
 {¶ 15} In dismissing appellant's complaint in the present case, the trial court interpreted Doe as holding that, as a matter of law, "in sexual assault cases, the events triggering the limitations period for the abuse claim against the abuser also trigger the limitations period for negligence claims against the church." Decision and Order/Entry at p. 8. The trial court stated:
Plaintiff's allegations as to when he learned of Hopp's otherdiscipline are immaterial. The court in Doe . . . held that knowledge ofthe abuse itself and the identity of the clergy perpetrator is sufficientto apprise any claimants of the possibility of a claim against thechurch. The plaintiff's knowledge of the abuse, his knowledge of theperpetrator, and his knowledge that he was a priest of the Archdiocese,was sufficient to apprise him of the possibility that the Archdiocese mayhave been negligent.
Id. at 8-9.
 {¶ 16} We disagree with the trial court's reading of Doe. The language quoted earlier from the Doe decision clearly indicates that only because the plaintiff in Doe "never claimed that his knowledge of the sexual abuse was insufficient to apprise him of the possibility that the church or the school district had been negligent in failing to protect him," that, under those circumstances, the Ohio Supreme Court was left toassume that knowledge of the abuse also triggered knowledge of the possibility of independent claims against the church in that case.[1]Doe, supra at 539.
 {¶ 17} In the case before us, appellant's complaint specifically alleged insufficient knowledge to apprise him of the possibility that the Archdiocese and the Archbishop were negligent, thus falling squarely within the provisional circumstances outlined in Doe. In sum, we conclude that the appellant in this case has made the specific allegation, the absence of which was determinative in Doe, to wit: insufficiency of knowledge regarding the negligence of the Archdiocese until April 2002. As a result, if the allegations are true, the two-year statute of limitations in this case would not begin to run until that date, and the complaint is not subject to a Civ.R. 12(B)(6) dismissal. See Doe, supra at 539 (citing Browning v. Burt (1993), 66 Ohio St.3d 544, 613 N.E.2d 993.) Accordingly, the first and second assignments of error are sustained.
 {¶ 18} In appellant's third assignment of error, he alleges that he is not time barred by the five-year statute of limitations governing the Ohio Corrupt Activity Act. In response, the Archdiocese and the Archbishop argue that (1) appellant has failed to allege the appropriate elements necessary to prove an Ohio Corrupt Activities Act violation and (2) that the five-year statute of limitations has run because appellant was abused by Hopp more than five years ago. We disagree. For example, the complaint states:
The persons controlling the affairs of the enterprise(s) have conductedand/or participated in, directly or indirectly, the affairs of theenterprise(s) through a pattern of corrupt activities or pattern orpractice of corrupt activity in violation of O.R.C. § 2923.32. DefendantsArchdiocese, [Archbishop] and Hopp maintained and exercised control overthe enterprise(s) alleged.
 Upon information and belief, since approximately 1950 through thepresent, Defendants have conspired to and have engaged in conduct inviolation of Ohio statutory and common law, including but not limitedto: intentionally, recklessly, and/or negligently concealing the criminalconduct of their agents, including Defendant Hopp; aiding and abettingthe concealment of criminal conduct; aiding and abetting criminal sexualconduct; failing to report criminal conduct of their agents; obstructingjustice; obstructing state and/or local criminal investigation; evadingcivil and/or criminal prosecution and liability; perjury; destroyingand/or concealing documents and records; victim and witnessintimidation; violating the civil rights of children and families;engaging in mail and/or wire fraud; and committing fraud and/orfraudulent inducement of their parishioners. Said actions or inactionswere committed in furtherance of their scheme to protect predatorypriests and other clergy and/or agents from criminal or civil prosecutionin order to maintain or increase charitable contributions and/or to avoidpublic scandal in the Roman Catholic Church.
 The persons controlling or directing the affairs of the enterprise(s)knew that the enterprise's clergy and employees, including DefendantHopp, were sexually exploiting and abusing children, including thePlaintiff, and they showed willful indifference and/or reckless orintentional disregard for the children under their guidance and/orsupervision in order to further their scheme. As a result of their acts,the enterprise(s), intentionally and showing willful indifference and/orreckless disregard, maintained a web of predatory priests who perpetratedcriminal acts of child abuse throughout Ohio for over fifty (50) years.
 The prohibited criminal conduct of the enterprises(s) constitutes apattern of corrupt activity, in that there were two or more predicateincidents of corrupt activity that are related to the affairs of the sameenterprise, are not isolated, and are not so closely related to eachother and connected in time and space that they constitute a singleevent.
 Upon information and belief, persons controlling or directing theaffairs of the enterprise(s) committed a continuing pattern of corruptactivity in furtherance of its scheme by engaging in fraudulent conductacross Ohio and the world, including but not limited to the following:
 In 1962, the Vatican prepared a document for "all Patriarchs, Bishopsand Other Diocesan Ordinaries" entitled "Instruction On The Manner OfProceedings In Cases of Solicitation." This document was supplied to, andwas binding upon, all American bishops and officials, including agents ofDefendant Diocese.
 The document cautioned that "[This text is] (sic) to be diligentlystored in the secret archives of the Curia as strictly confidential." Thedocument was essentially an instruction manual on how to handleallegations of sexual abuse made against priests and other religiousagents "in a most secretive way, and after they have been defined andgiven over to execution, they are to be restrained by perpetual silence. . . under penalty of excommunication." The method of inquisition of theaccused is set forth, as are possible penalties, ranging from suspensionfrom the celebration of Mass to reduction to the status of lay brother.
 Further, it is clear that one objective of the Vatican was to suppressscandal attaching to priest molestation cases for the express purpose ofavoiding financial loss. The document specifically advised that"delinquent" priests should not "[remain] in a certain place, i.e. shouldbe transferred to another assignment, if necessary to [sic] `remove thenear occasion (i.e. temptation) [sic] . . . or for the prevention ofscandal or reparation for it.'" [sic]
 The document never even mentions the victims of "delinquent priests";nor does the document advise or direct bishops and other church officialsto give notice of potential risk to any civil or religious authority, inorder to protect future victims and prevent future molestation.
 The document never advises or directs bishops and other churchofficials to report criminal sexual conduct of "delinquent" priests toappropriate law enforcement agencies.
 In April of 1990 at a Midwest Canon Law Society conference in Ohio,Bishop James Quinn of Cleveland gave an address titled "NCCB Guidelines,and other Considerations in Pedophilia Cases," in which he stated:
 Nevertheless, personnel files should be carefully examined to determinetheir content. Unsigned letters alleging misconduct should be expunged.Standard personnel files should contain no documentation relating topossible criminal behavior. Serious moral questions, signed allegations,those should be a part of the secret file anyhow. But they still subpoenathem. But comb through your files.
 Now what files have been subpoenaed, they cannot be tampered with;destroyed, removed; that constitutes obstruction of justice and contemptof court. Prior, however, thought and study ought to be given if youthink it is going to be necessary; if there's something there you reallydon't want people to see you might send it off to the ApostolicDelegate, because they have immunity to protect something that ispotentially dangerous, or that you consider to be dangerous, you mightsend it there.
 The conduct described above constitutes a "pattern of corrupt activity"and violates R.C. Section 2923.32, in that Hopp engaged in crimes ofsexual offenses with minors, Defendants Archdiocese and [the Archbishop]failed to fulfill their legal obligations to report such crimes andparticipated in the concealment of such crimes, and the actions and/orknowing omissions of Defendants Archdiocese and [the Archbishop]facilitated Hopp's conduct and/or prevented Plaintiffs from seekingtreatment or minimizing future harm.
 Hopp engaged in numerous incidents of sexual offenses, and notice ofsuch conduct was given to Defendants Archdiocese and [the Archbishop] onmany occasions.
Complaint at ¶¶ 31-39 (internal citations omitted).
 {¶ 19} We have reviewed the complaint and reject the allegation of the Archdiocese and the Archbishop that the essential elements of the offense/cause of action were not sufficiently plead. See Universal Coachv. New York Transit Authority (1993), 90 Ohio App.3d 284, 290-91,629 N.E.2d 28. Moreover, R.C. 2923.34(K) describes the statute of limitations associated with the Ohio Corrupt Activity Act, and it states that a cause of action may be commenced "at any time within five years after the unlawful conduct terminates or the cause of action accrues. . . ." R.C. 2923.34(K). Pursuant to our discussion, supra, we conclude that because appellant alleged insufficient knowledge to apprise him of the possibility that the Archdiocese and the Archbishop were engaged in corrupt activities pursuant to R.C. 2923.32 until April 2002, then, if proven, his time would accrue beginning on that date. Accordingly, appellant would have until April 2007 to be within the five-years statute of limitations stated in R.C. 2923.34(K). Thus, the third assignment of error is sustained.
 {¶ 20} In sum, all three assignments of error are sustained, the judgment of the Common Pleas Court of Shelby County dismissing the complaint on a Civ.R. 12(B)(6) motion is reversed and the matter is remanded to that court for further proceedings according to law.
Judgment Reversed and Cause Remanded.
 Cupp and Bryant, JJ., concur.
[1] On this point, we also reject the interpretation of the First District Court of Appeals in Cramer v. Archdiocese of Cincinnati (2004),158 Ohio App.3d 110, 814 N.E.2d 97, 2004-Ohio-3891. In Cramer, the court affirmed a Civ.R. 12(B)(6) dismissal of claims similar to those outlined in the case before us. Id. Like the instant case, the appellants in Cramer alleged insufficient knowledge to apprise them of the possibility that the Archdiocese were negligent. Id. However, like the trial court in the instant case, the Cramer court analyzed Doe and rejected this argument by opining that the notice of priest abuse is tantamount to notice of possible church involvement, which triggers the running of the two-year statute of limitations against the church as to all possible claims after the plaintiff reaches the age of majority. Id. at ¶ 14.
Moreover, while we find the determination in Doe that Doe did not claim or argue that his knowledge was insufficient to apprise him of the possibility of negligence to be the key factor in the Doe decision on this issue, the Cramer court dismisses that language as dicta. Id. at ¶ 12 ("Although the discussion in Doe with respect to the plaintiff's discovery of the employer's culpability was obiter dicta, the appellants claim that it has been adopted in the holdings of Ohio's courts.").
Finally, the Cramer court, in our view, went beyond the scope of Civ.R. 12(B)(6) by ruling as a matter of law that appellants' knowledge that the Archdiocese had employed the priest and the fact that repeated assaults had all occurred on church property were sufficient facts to put the appellants "on notice that there was a possibility that the Archdiocese had been negligent." Id. at ¶ 16. We believe such a determination can only be made by the trier-of-fact and is not appropriately made via a motion to dismiss on the pleadings.